**WO**                                                                                          JDN

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Karen Marie Hansen,                         )    No. CV 09-1290-PHX-GMS (ECV)
                                            )
            Plaintiff,                      )    **ORDER**
                                            )
vs.                                         )
                                            )
Charles Ryan, et al.,                       )
                                            )
            Defendants.                     )
                                            )
_____ )

Plaintiff Karen Marie Hansen brought this civil rights action under 42 U.S.C. § 1983 against various Arizona Department of Corrections (ADC) employees (Doc. 10).  Before the Court is Defendants' Motion for Summary Judgment (Doc. 80).

The Court will grant the motion and terminate the action.

## I.    Background

Plaintiff's claims arose during her confinement at the Arizona State Prison Complex-Perryville, Santa Cruz Unit, in Goodyear, Arizona (Doc. 10 at 1).  In her First Amended Complaint she named as Defendants Sergeant Mitchell; Correctional Officer (CO) IV Michael Backes; CO IIIs Ira Jones and Garcia; and CO IIs K. Rahman, G. Mims, and T. Thornton (id. at 2-3).  Plaintiff alleged that legal mail addressed to her had been returned to sender without her authorization or any notification and without rationale (id. at 5).  Plaintiff stated that Jones conducted an investigation and discovered that Rahman, Mims, and Mitchell had returned more that 10 pieces of court and/or attorney correspondence (id. at 5-6).  Plaintiff alleged that Rahman, Mims, and Mitchell's conduct was in retaliation for

Plaintiff filing a prior civil rights lawsuit against ADC officials (id. at 6-7, ref. to CV 07-2105-PHX-GMS (D. Ariz.)).  According to Plaintiff, the return of her mail caused financial detriment and loss of the prospect to file for habeas relief.  Count I sets forth a retaliation claim against Rahman, Mims, and Mitchell based on these facts (Doc. 10 at 4-7), and Count II sets forth an access-to-courts claim against these three Defendants on the same facts (id. at 8-11).

In Counts III and IV, Plaintiff alleged that she received an Order to Show Cause in CV 07-2105, and she delivered her Response to Thornton (id. at 13).  Plaintiff claimed that Thornton, Rahman, Mitchell, and Mims opened and read her Response and then held on to it so it would be untimely (id. at 14).  Plaintiff stated that the Court then dismissed CV 07-2105 due to her failure to respond to the Order to Show Cause (id.).  Plaintiff alleged that she spoke to Garcia, who refused to provide assistance, and that Garcia, Jones, and Backes refused to accept her informal grievances when she tried to grieve the delay in transmitting her Response to the Court (id. at 14-15).  Court III alleged a retaliation claim against Thornton, Rahman, Mims, Mitchell, Garcia, Jones, and Backes based on these facts (id. at 12-15), and Count IV alleged an access-to-courts claim against Thornton, Rahman, Mims, and Mitchell on the same facts (id. at 16-19).

On January 30, 2012, Defendants filed their pending Motion for Summary Judgment seeking judgment on the grounds that (1) Plaintiff cannot satisfy the elements required to support a retaliation claim in Count I; (2) Plaintiff has not described an underlying nonfrivolous claim or established causation to support her access-to-the-courts claim in Count II; (3) the Defendants named in Count III played no role in sending out Plaintiff's legal mail and Plaintiff cannot establish a retaliation claim; and (4) Plaintiff cannot show that she suffered any harm as a result of Defendants' conduct alleged in Count IV (Doc. 80).

The Court issued a Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), which advised Plaintiff of Federal Rule of Civil Procedure 56 and the local rules governing summary judgment and set a response deadline of March 5, 2012 (Doc. 85).

On March 2, 2012, Plaintiff filed a Motion for Extension seeking to extend her

1   response deadline by 60 days so that she could conduct additional discovery (Doc. 86).  The

2   Court denied Plaintiff's motion on the basis that she failed to comply with Federal Rule of

3   Civil Procedure 56(d) or show specific facts she expected to elicit from further discovery

4   (Doc. 89).  On May 1, 2012, Plaintiff filed another Motion for Extension to extend the time

5   to file her opposition to summary judgment (Doc. 92).  On July 12, 2012, the Court denied

6   this second request for an extension (Doc. 99).

7         Defendants' Motion for Summary Judgment is now ready for ruling.

8   **II.    Summary Judgment Legal Standard**

9         A court must grant summary judgment "if the movant shows that there is no genuine

10  dispute as to any material fact and the movant is entitled to judgment as a matter of law."

11  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Under

12  summary judgment practice, the movant bears the initial responsibility of presenting the basis

13  for its motion and identifying those portions of the record, together with affidavits, that it

14  believes demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S.

15  at 323.

16        If the movant meets its initial responsibility, the burden then shifts to the nonmovant

17  to demonstrate the existence of a factual dispute and that the fact in contention is material,

18  i.e., a fact that might affect the outcome of the suit under the governing law, and that the

19  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

20  the nonmovant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250 (1986); see Triton

21  Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need

22  not establish a material issue of fact conclusively in its favor, First Nat'l Bank of Ariz. v.

23  Cities Serv. Co., 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific

24  facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v.

25  Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted); see Fed. R. Civ. P.

26  56(c)(1).

27        At summary judgment, the judge's function is not to weigh the evidence and

28  determine the truth but to determine whether there is a genuine issue for trial.  Anderson, 477

1   U.S. at 249.  The evidence of the non-movant is "to be believed, and all justifiable inferences

2   are to be drawn in his favor."  Id. at 255.  In its analysis, a court need consider only the cited

3   materials; however, it may also consider other materials in the record.  Fed. R. Civ. P.

4   56(c)(3).

5   **III.    Counts I and II**

6         **A.    Facts**

7         In support of their motion, Defendants submit a separate Statement of Facts (DSOF)

8   (Doc. 81), which is supported by Plaintiff's deposition (id., Ex. A), court documents (id.,

9   Exs. B-G), and Defendants' declarations and attachments (id., Exs. H-M).[1]  Although

10  Plaintiff did not submit a response for consideration, the Court will construe her verified First

11  Amended Complaint as an affidavit in opposition to the summary judgment motion (Doc.

12  10).  See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (allegations in a pro se plaintiff's

13  verified pleadings must be considered as evidence in opposition to summary judgment);

14  Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (verified complaint may be used

15  as an affidavit opposing summary judgment if it is based on personal knowledge and sets

16  forth specific facts admissible in evidence).  The Court takes judicial notice of the court

17  dockets in Plaintiff's prior state court and federal court proceedings, which relate to her

18  current retaliation and access-to-the-court claims.  See Fed. R. Evid. 201(b); Reyn's Pasta

19

20         [1]DSOF contains 119 paragraphs, many of which are not factual assertions and do not

21  comply with Local Rule of Civil Procedure 56.1(a) (separate statement of facts is to "include

22  only those facts that the Court needs to decide the motion.  Other undisputed facts (such as

    those providing background about the action or the parties) may be included in the

23  memorandum of law, but should not be included in the separate statement of facts").  Some

24  of DSOF set forth different Defendants' hypothetical explanations of what they think could

    have happened to Plaintiff's mail, with citations to unsupported and inadmissible declaration

25  testimony (see e.g. Doc. 81, DSOF ¶¶ 38-41, 63).  See Fed. R. Civ. P. 56(c)(4) (declaration

    in support of summary judgment must be based on personal knowledge and set out

26  admissible facts).  Many of DSOF set forth what different Defendants "understand"

    Plaintiff's allegations against them to be (see e.g. DSOF ¶¶ 35, 46, 65, 70, 84, 86, 92, 107,

27  113).  Making the Court's review even more arduous, DSOF are not in chronological or any

28  other discernable order.  Defense counsel is reminded of his obligation to strictly comply

    with the procedural rules governing summary judgment.

1   <u>Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (judicial notice of court

2   filings and other matters of public record is proper).

3          The record in this case is very convoluted.  The Court has extracted the following

4   relevant facts related to Counts I and II:

5          In 2007, Plaintiff filed a civil rights action in the District Court for the District of

6   Arizona against various ADC employees (Doc. 10 at 2, 7; Doc. 81, Ex. A, Pl. Dep. 22:6-14;

7   CV 07-2105-PHX-GMS[2]).  One of the named defendants in that action was Backes, who is

8   also a defendant in the instant action.  <u>See</u> CV 07-2105-PHX-GMS.  Plaintiff's 2007 civil

9   rights action alleged due process violations stemming from, among other things, prison

10  officials' failure to timely provide Plaintiff with state court documents, Backes' provision

11  of allegedly false information to the court, and Backes' failure to provide Plaintiff with a

12  Notice of Claim form in a timely manner.  <u>Id.</u>, Docs. 5-6.  The 2007 civil case was terminated

13  in May 2009.  <u>Id.</u>, Doc. 71.

14         Prior to that, in 2003, Plaintiff was sued in state court by her former employer, Titus

15  Group d/b/a Arizona Earthmovers.  Yavapai County Superior Court No. CV 2003-0617.

16  Judgment was entered in favor of Arizona Earthmovers.  <u>Id.</u>  Plaintiff filed an appeal to the

17  Arizona Court of Appeals; she appealed (1) summary judgment entered against her and in

18  favor of Arizona Earthmovers on claims of conversion and unjust enrichment and (2) the

19  superior court's judgment following a bench trial that found Plaintiff liable to Arizona

20  Earthmovers for constructive fraud (Doc. 81, Ex. K, Attach. 1; CA-CV 07-0560, Dec. 2,

21  2008 Mem. Decision).  The appeal was assigned case number CA-CV 07-0560.

22         In the instant action, Plaintiff states that on February 14, 2009, she received mail from

23  the Arizona Court of Appeals and learned that mail related to CA-CV 07-0560 sent to her on

24  January 15 and 20, 2009, had been returned to the appellate court (Doc. 10 at 5).  According

25  to grievance documents in the record, the returned mail included copies of the state appellate

26

27         [2]In her deposition, Plaintiff testified that she filed the case ending in 2105 in 2005
    (Doc. 81, Ex. A, Pl. Dep. 22:13-14); however, the federal court docket reflects that Plaintiff
28  filed CV 07-2105-PHX-GMS in 2007.

court's December 2, 2008 final ruling and information to Plaintiff as to how to proceed to the next level in the appeal process (Doc. 81, Ex. K, Attach. 1).  Plaintiff states that she had not authorized the return of mail nor had she been notified that those documents had been sent from the court (Doc. 10 at 5).

On December 12, 2008, Arizona Earthmovers sought costs and attorneys' fees pursuant to the December 2, 2008 ruling (DSOF ¶ 25; Doc. 81, Ex. B).  On January 13, 2009, the Court of Appeals issued its order awarding costs and fees to Arizona Earthmovers (DSOF ¶ 26; Doc. 81, Ex. B).  The copy of the January 13, 2009 Order sent to Plaintiff was returned on January 22, 2009; the returned mail indicated that the mail was "refused, unable to forward" (id.).

Plaintiff's Arizona Inmate Management System record shows that she was out to the hospital from December 23-29, 2008, and out to court from January 7-14, 2009 (DSOF ¶ 41).  Plaintiff had returned to the Perryville-Santa Cruz Unit the day before numerous legal documents were returned on January 15, 2009 (DSOF ¶ 38).

Plaintiff states that after discovering on February 14, 2009, that mail had been returned without notification or authorization, she contacted CO III Jones, who investigated the mail issue (Doc. 10 at 5).  Plaintiff states that Jones discovered that over ten other court and attorney-mail documents addressed to Plaintiff from December 2008-February 2009 had been returned to sender without Plaintiff's knowledge (id. at 5-6).  According to the Rerouted Legal Mail Log for January 15, 2009, the mail addressed to Plaintiff that was returned to sender that day included the above mentioned Arizona Court of Appeals documents as well as two documents from the District Court for the District of Arizona and mail from the Arizona Secretary of State, the Attorney General, and a private attorney (Doc. 81, Ex. I, Attach. 1).  Defendants state that Plaintiff filed an inmate letter concerning this return-mail issue, and Backes, who was the Grievance Coordinator for the Santa Cruz Unit, brought the inmate letter to Jones to investigate (DSOF ¶¶ 81, 83).

Plaintiff alleges that her mail was returned by Rahman, Mims, and Mitchell, because those were the names provided her by ADC and Jones (Doc. 10 at 6; DSOF ¶ 5).  Plaintiff

states that Rahman, Mims, and Mitchell all work at the mail central receiving unit that either returns mail or sends it forward to inmates (DSOF ¶ 5). Plaintiff further states that she believes that these Defendants' actions were orchestrated by Backes, the primary defendant in Plaintiff's 2007 civil law suit (Doc. 10 at 7).

Defendants state that after Jones investigated the matter, Jones and Backes were unable to determine exactly what occurred with the legal mail sent to Plaintiff in January 2009 (id. ¶ 111). Defendants state that Backes directed Jones to call the Court of Appeals to determine the best course of action for Plaintiff under the circumstances since she had reported that she missed a deadline due to the failure to receive a court document (id.). Defendants state that the Court of Appeals Clerk was unable to propose a remedy (id.).

At the relevant time, Rahman was employed at the Perryville Complex Mail and Property Room, which provides mail functions for the Santa Cruz Unit where Plaintiff was housed (DSOF ¶ 33). Rahman does not know why Plaintiff's legal mail was returned on January 15 or 20, 2009 (DSOF ¶¶ 40, 43).

At the relevant time, Mims was also assigned to the Perryville Complex Mail and Property Room (DSOF ¶ 51). The Rerouted Legal Mail Log for January 15, 2009, which shows that various pieces of mail addressed to Plaintiff were returned to sender, is not in Mims' handwriting, and her duties did not include completing Rerouted Legal Mail Log forms (DSOF ¶¶ 53-55).

At the relevant time, Mitchell was assigned as supervisor of all operations at the Perryville Complex Mail and Property Room; his duties did not include the actual handling and processing of incoming mail (DSOF ¶¶ 68, 72-73). Mitchell states that he never was asked about any mail addressed to Plaintiff nor did he instruct staff to withhold delivery of any mail addressed to Plaintiff (id. ¶ 74).

## B. Defendants' Arguments

Defendants argue that Plaintiff's retaliation claim fails because she has not established which individual returned her legal mail to the court, that this individual was aware of her prior protected conduct, or that she was harmed by any delay in receiving her legal mail

1   (Doc. 80 at 4).  Defendants assert that, at most, Plaintiff shows that legal mail addressed to

2   her was mistakenly returned to sender by an unidentified prison official after Plaintiff had

3   recently been transferred back to ADC and that she should have received her mail (id. at 5).

4   Defendants contend that even if Plaintiff could demonstrate that Rahman, Mims, or Mitchell

5   were responsible for returning her legal mail in January 2009, a single mistake or occasional

6   incident of mishandling mail does not rise to a § 1983 claim (id.).  They submit that absent

7   any evidence that the mail room Defendants were aware of Plaintiff's previous mail

8   problems, the record supports only a conclusion that Plaintiff "was simply the victim of some

9   bad luck" (id.).

10          As to Plaintiff's access-to-the-court claim in Count II, Defendants argue that Plaintiff

11   fails to describe any underlying nonfrivolous clam (id. at 6-7).  They add that even if she had

12   sufficiently described an underlying nonfrivolous claim, she failed to establish who was

13   responsible for returning her legal mail (id. at 7).

14          Finally, Defendants maintain that Plaintiff cannot show that she was harmed by any

15   delay in receipt of mail because in the state appellate case, CA-CV 07-0560, on December

16   12, 2008, Arizona Earthmovers sought costs and fees pursuant to the December 2, 2008

17   ruling; thus, Plaintiff had to file any objection within 15 days—which was January 4, 2010

18   (id., citing Ariz. R. Civ. P. 7.1(a)).  Defendants also state that Plaintiff cannot argue that the

19   failure to deliver to her a copy of the January 9, 2009 Order awarding costs and fees affected

20   her ability to petition the Arizona Supreme Court for review because the Court of Appeals

21   granted her additional time to file the petition, which she did (id., citing DSOF ¶ 26).

22   Defendants therefore conclude that Plaintiff was not denied the ability to file her petition, and

23   her claims in Counts I and II must be dismissed (Doc. 80 at 5, 7-8).

24          **C.     Analysis**

25                 **1.  Count I-Retaliation (Rahman, Mims, and Mitchell)**

26          "Of fundamental import to prisoners are their First Amendment 'right[s] to file

27   grievances and pursue civil rights litigation in the courts.'"  Rhodes v. Robinson, 408 F.3d

28   559, 567 (9th Cir. 2005) (quoting Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003), and

Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995)); see also Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (prisoners have a constitutional right to meaningful access to the courts, and prison authorities may not penalize or retaliate against an inmate for exercising that right), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223 (2001). Thus, allegations of retaliation against an inmate's First Amendment rights to speech or to petition the government may support a civil rights claim. See Rizzo v. Dawson, 778 F.2d 527, 531-32 (9th Cir. 1985); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989); see also Pratt v. Rowland, 65 F.3d 802, 806 & n. 4, 807 (9th Cir. 1995) (retaliation claims "fall within the 'other protection[s] from arbitrary state action' . . . because they are based upon protection of the prisoner's First Amendment rights, and not their Due Process rights").

"[A] viable claim of First Amendment retaliation entails five basic elements: (1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes, 408 F.3d at 567-68. A prisoner "must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). A variety of conduct can be actionable as retaliatory if undertaken for an improper purpose. See, e.g., Rizzo, 778 F.2d at 531-32. And the resulting injury need not be tangible to support the claim. Hines v. Gomez, 108 F.3d 265, 267, 269 (9th Cir. 1997) (an injury asserted to be the chilling effect of an officer's false accusation on the prisoner's First Amendment right to file prison grievances is sufficient to support a retaliation claim).

Retaliation claims must be evaluated in light of the concerns of excessive judicial involvement in day-to-day prison management, and courts must therefore "afford appropriate deference and flexibility" to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory. Pratt, 65 F.3d at 807.

### a. Protected Conduct

1   Plaintiff alleges that she was retaliated against for previously filing a lawsuit against

2   ADC officials (Doc. 10).  There is no dispute that Plaintiff filed a civil rights action against

3   various ADC officials in 2007, and this is protected conduct under the First Amendment.

4   Rizzo, 778 F.2d at 531-32; Valandingham, 866 F.2d at 1138.

5               ***b.  Adverse Action***

6     The evidence shows that on January 15, 2009, at least eight pieces of legal mail,

7   including mail from both this Court and the Arizona Court of Appeals, were not delivered

8   to Plaintiff and were returned to sender (Doc. 81, Ex. I, Attach. 1).  The documented reasons

9   for returning Plaintiff's legal mail included "Inmate Not Found No ADC #"; "Inactive"; and

10  "Temporary Abscent [sic]" (id.).[3]  There is no dispute that despite these various reasons for

11  returning her mail, Plaintiff was actually in custody at the Perryville-Santa Cruz Unit on

12  January 15, 2009, and the legal mail should have been delivered to her (see Doc. 80 at 5

13  (noting that Pl. "should have received her mail")).  Defendants present no argument that this

14  failure to deliver Plaintiff her legal mail when she was present at the facility did not

15  constitute an adverse action, and the Court finds a genuine issue of material fact whether this

16  amounted to an adverse action.

17    To support her retaliation claim, however, Plaintiff must demonstrate that *Defendants*

18  took the adverse action against her.  Rhodes, 408 F.3d at 567; see Leer v. Murphy, 844 F.2d

19  628, 634 (9th Cir. 1988) (the plaintiff must identify specific facts as to each individual

20  defendant's acts or omissions that allegedly caused the deprivation).  Defendants argue that

21  Plaintiff cannot establish that any one of them returned her mail (Doc. 80 at 5).

22    In a sworn declaration, Mims states that the handwriting on the January 15, 2009

23  Rerouted Legal Mail Log is not hers and that her duties while working in the Perryville

24  Complex Mail Room did not include filling out the Rerouted Legal Mail Log (Doc. 81, Ex.

25  I, Mims Decl. ¶¶ 5-7).  Mims further states that she was not involved in returning any of

26

27  _____

28  [3]The Court notes that although two pieces of legal mail included the reason for return
as "Inmate Not Found No ADC #," the Rerouted Legal Mail Log form itself lists Plaintiff's
name and ADC number for each piece of mail (Doc. 81, Ex. I, Attach. 1).

1    Plaintiff's legal mail on January 15, 2009 (id. ¶ 17).  Mitchell avers that he did not process

2    any inmate mail that came in and he never instructed staff to withhold delivery of mail to

3    Plaintiff (Doc. 83, Ex. J, Mitchell Decl. ¶¶ 7, 9).

4         Plaintiff alleges that Rahman, Mims, and Mitchell were involved in the adverse action

5    by virtue of their positions in the mail room at the relevant time and because CO III Jones

6    informed Plaintiff that these three were involved (Doc. 10 at 6).  But Plaintiff presents no

7    other documentary evidence linking any of these three Defendants to the returned legal mail.

8    And, in failing to timely respond to Defendants' Motion for Summary Judgment, Plaintiff

9    does not refute Mims and Mitchell's averments that their duties did not include filling out

10   a Rerouted Legal Mail Log or processing inmate mail or that neither of  them were involved

11   in returning Plaintiff's legal mail.  Plaintiff presents no evidence to show a connection

12   between Mims or Mitchell and the withholding or return of her legal mail.  Consequently,

13   Plaintiff fails to show that either of these two Defendants took an adverse action against her,

14   and she cannot establish the second element necessary to support her retaliation claim.  See

15   Rhodes, 408 F.3d at 567-68; Leer, 844 F.2d at 634.  Summary judgment will therefore be

16   granted to Mims and Mitchell on the retaliation claim in Count I.

17        Rahman states in his declaration that he does not know the actual circumstances that

18   existed when Plaintiff's legal mail was processed and returned to sender on January 15 or 20,

19   2009 (Doc. 81, Ex. H, Rahman Decl. ¶¶ 10, 13).  Rahman confirms that his duties included

20   processing inmate mail, confirming whether an inmate was present at the prison complex,

21   and completing a Rerouted Legal Mail Log entry if the inmate is not present (id. ¶ 6).

22   Notably, Rahman refers to the January 15, 2009 Rerouted Legal Mail Log but does indicate

23   whether he authored any of the Log's entries (see id.).  Nor does he specifically deny any

24   involvement in the return of Plaintiff's mail in January 2009 (see id.).  Thus, Rahman's

25   declaration statements do not foreclose the possibility that he was involved in returning

26   Plaintiff's legal mail.

27        Defendants do not identify who in the mail room was responsible on the relevant dates

28   for checking inmates' status and returning mail if necessary, and they do not indicate

1   who completed the January 15, 2009 Rerouted Legal Mail Log.  This absence of
2   information—information that Defendants presumably would have access to—leaves a
3   material question of fact whether Rahman was the individual or one of the individuals who
4   returned Plaintiff's legal mail to sender in January 2009 despite Plaintiff being present at the
5   prison complex.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

### c. Adverse Action "Because of" Protected Conduct

7      The analysis therefore proceeds as to Rahman, and the next step requires Plaintiff to
8   show that her protected conduct was "the substantial or motivating factor" behind Rahman's
9   action. Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (citing Soranno's Gasco, Inc.
10  v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)).  To make this showing, Plaintiff must
11  demonstrate that Rahman knew of the protected conduct and that either (1) there was
12  proximity in time between the protected conduct and the allegedly retaliatory action, (2) that
13  Rahman expressed opposition to the speech, or (3) Rahman's proffered reason for the
14  adverse action was pretextual.  Corales v. Bennett, 567 F.3d 554, 568 (9th Cir. 2009)
15  (citation and emphasis omitted); see Pratt, 65 F.3d at 808 (timing can be considered as
16  circumstantial evidence of retaliatory event).

17     Plaintiff does not provide any specific facts to show that Rahman was aware of
18  Plaintiff's 2007 civil rights lawsuit against ADC officials.  Rahman was not a party in the
19  2007 lawsuit, and Plaintiff testified in her deposition that she has no specific or personal
20  knowledge that Rahman was aware of the 2007 lawsuit (Doc. 81, Ex. A, Pl. Dep. 23:19-25).
21  In his declaration, Rahman specifically avers that he was not aware of Plaintiff's prior civil
22  rights lawsuit until mid-2009 (id., Ex. H, Rahman Decl. ¶ 17).

23     In short, there is nothing in the record from which the inference can be made that in
24  January 2009, Rahman knew of Plaintiff's protected conduct.  Without this element met,
25  Plaintiff cannot show that Rahman's adverse action was motivated by her protected conduct.
26  Summary judgment will therefore granted to Rahman on Count I.

### 2.  Count II-Access to the Courts (Rahman, Mims, and Mitchell)

28     Inmates have a fundamental constitutional right of access to the courts.  Lewis v.

1   <u>Casey</u>, 518 U.S. 343, 346 (1996).  But this right is limited to direct criminal appeals, habeas

2   petitions, and civil rights actions.  <u>Id.</u> at 354.  Claims for denial of access to the courts may

3   arise from the frustration or hindrance of "a litigating opportunity yet to be gained"

4   (forward-looking claim) or from the loss of a meritorious suit that cannot now be tried

5   (backward-looking claim).  <u>Christopher v. Harbury</u>, 536 U.S. 403, 412-15 (2002).

6       Plaintiff presents a backward-looking claim; therefore, she must show "(1) the loss

7   of a 'nonfrivolous' or 'arguable' underlying claim; (2) the official acts frustrating the

8   litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise

9   available in a future suit."  <u>Phillips v. Hust</u>, 477 F.3d 1070, 1076 (9th Cir. 2007) (citation

10  omitted), <u>overruled on other grounds by</u> <u>Hust v. Phillips</u>, 555 U.S. 1150 (2009).

11                    ***a.  Nonfrivolous Underlying Claim***

12      A frivolous claim is one without arguable merit either in law or fact, <u>see</u> <u>Neitzke v.</u>

13  <u>Williams</u>, 490 U.S. 319, 325 (1989), or one that has "little or no chance of success."  <u>Carroll</u>

14  <u>v. Gross</u>, 984 F.2d 392, 393 (11th Cir. 1993) (citations omitted).  Plaintiff does not have to

15  show that her claim would have ultimately been successful on the merits.  <u>Allen v. Sakai</u>, 48

16  F.3d 1082, 1085 (9th Cir. 1994).  But she must show that it had arguable merit.  <u>Lewis</u>, 518

17  U.S. at 353 n. 3; <u>see</u> <u>Christopher</u>, 536 U.S. at 416 (the underlying claim must be "described

18  well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the

19  underlying claim is more than hope").

20      In her pleading, Plaintiff states that the return of her legal mail resulted in a financial

21  detriment of $5,500 pursuant to an Arizona Court of Appeals ruling and affected her prospect

22  to seek habeas corpus relief in federal court (Doc. 10 at 10).  She does not provide any

23  further specific facts regarding her underlying claims in either the state appellate court or the

24  federal court.  <u>See</u> <u>Christopher</u>, 536 U.S. at 416 (the underlying cause of action "must be

25  addressed by allegations in the complaint sufficient to give fair notice to a defendant").

26      In her deposition, when she was asked whether the access-to-the-court claim in Count

27  II relates to legal mailings connected to her state court case, Plaintiff testified that Count II

28  relates specifically to the legal mailings from the federal district court that pertain to her prior

1   civil rights lawsuit, CV 07-2105-PHX-GMS (Doc. 81, Ex. A, Pl. Dep. 6:9-16).  Then, later

2   in the deposition, Plaintiff's testimony suggests that the return of the January 13, 2009 final

3   judgment and costs award from the Arizona Court of Appeals is one of the returned legal

4   mail documents relevant to Count II (id. 8:14-19).  Without more, Plaintiff's contradicting

5   statements and lack of any information about her state court appeal fail to demonstrate a

6   nonfrivolous underlying claim sufficient to support an access-to-the-court claim.

7         The Court nonetheless reviewed Plaintiff's underlying claim in the Arizona Court of

8   Appeals.  In her appeal, Plaintiff argued that the superior court (1) violated her due process

9   rights when it denied her motion to appear in person and required her to participate in trial

10  telephonically; (2) violated state law when it considered her husband's deposition and trial

11  testimony; and (3) improperly denied her motions for a new trial and for relief from

12  judgment. CA-CV 07-0560, Dec. 2, 2009 Mem. Decision at 5 ¶ 8.  In its December 2, 2008

13  ruling, the appellate court thoroughly analyzed each of Plaintiff's arguments and determined

14  that none had merit. Id. at 8-16 ¶ 24.  The appellate court further found that Plaintiff's appeal

15  was frivolous and filed solely for the purpose of delay and, therefore, awarded costs and

16  attorneys' fees to the appellee. Id. at 17-18 ¶ 26.  On this record, with respect to any returned

17  legal mail connected to Plaintiff's state appellate case, she cannot demonstrate a nonfrivolous

18  underlying claim.

19        Additionally, there is no evidence that Plaintiff suffered an actual injury as a result of

20  the return of her state court legal mail in January 2009.  See Lewis, 518 U.S. at 349.  The

21  record shows that the Arizona Supreme Court subsequently granted Plaintiff's request for an

22  extension of time to file a Petition for Review, which she then filed on April 2, 2009 (Doc.

23  81, Ex. B (Ariz. Ct. App. Div. I, Docs. 40, 45)).

24        As stated, Plaintiff contends that the basis of her Count II claim is the returned mail

25  related to her prior federal civil rights case.  Court records show that in that prior action,

26  Plaintiff alleged that the U.S. Marshall improperly served ADC officials a petition for

27  dissolution of marriage and those officials then failed to timely provide the petition to

28  Plaintiff; as a result, she could not timely respond to the petition and lost property.  CV 07-

2105-PHX-GMS, Doc. 5.  The Court cannot conclude that this claim was frivolous; indeed, the Court screened the Complaint and found that Plaintiff's allegations stated a constitutional claim.  Id., Doc. 6.

But Plaintiff testified in her deposition that the documents related to this 2007 federal case that were returned in the mail in January 2009 "were just orders," and this returned mail "did not damage me, per se, other than the fact that I had to get ahold of my counselor to call the Court Clerk's office to reissue those documents again" (Doc. 81, Ex. A, Pl. Dep. 13:16-13:22).  Plaintiff confirmed that she did, in fact, obtain the documents and did not miss any deadlines as a result (id. 13:23-14:1).  The federal court docket shows that those documents related to discovery matters, and the Court subsequently granted extensions to discovery deadlines.  CV 07-2105-PHX-GMS, Docs. 60, 64.  This evidence shows that the return of legal mail related to Plaintiff's civil rights action did not result in any missed deadlines or actual injury.  Without a showing of actual injury, Plaintiff cannot sustain her access-to-the-courts claim.  See Lewis, 518 U.S. at 349.

In light of the above, the Court will grant summary judgment to Rahman, Mims, and Mitchell on the access-to-the-courts claim in Count II.

**IV.   Counts III and IV**

**A.   Facts**

The following relevant disputed and undisputed facts relate to Counts III and IV:

On May 7, 2009, the Court in CV 07-2105 issued an Order to Show Cause to Plaintiff why her case should not be dismissed for lack of subject matter jurisdiction (Doc. 81, DSOF ¶ 11).  CV 07-2105-PHX-GMS, Doc. 70.[4]  Plaintiff had 15 days in which to file her Response.  Id.  Within that time frame, on May 18, 2009, Plaintiff hand-delivered her

---

[4]The Order to Show Cause found that Plaintiff's claim appeared to challenge the effect of state court rulings or actions in her divorce proceedings, and a collateral attack on a state court ruling in federal court is barred by the Rooker-Feldman doctrine.  CV 07-2105-PHX-GMS, Doc. 70 at 6, citing Rooker v. Fidelity Trust Co., 263 U.S. 413, 415 (1923).  Plaintiff was therefore ordered to show cause why the action should not be dismissed on that basis.  CV 07-2105-PHX-GMS, Doc. 70.

1  Response to Thornton for mailing, along with five other pieces of legal mail (Doc. 10 at 13;

2  DSOF ¶¶ 11-12, 95).

3      Defendants state that Thornton filled out a Special Mail Transfer Form and Log,

4  which is used to maintain a written record of legal mail sent out by inmates, and he listed the

5  six pieces of mail and their destination and then had Plaintiff sign the form (id. ¶¶ 95, 60-61).

6  Defendants state that Thornton transferred possession of Plaintiff's legal mail to Officer

7  Hartley at Complex Mail and Property, who signed off acknowledging receipt (id. ¶ 97).

8  Normal ADC procedures provide that at this stage, outgoing legal mail is placed into a bin

9  to be taken to the post office at the earliest possible opportunity (DSOF ¶ 61).

10      The Court did not receive Plaintiff's Response until May 26, 2009.  CV 07-2105-

11  PHX-GMS, Doc. 72.  The Court did not enter the Response onto the docket, however, until

12  June 1, 2009.  Id.  Meanwhile, on May 28, 2009, and before entering Plaintiff's Response

13  filing on the docket, the Court entered Judgment and dismissed Plaintiff's action based on

14  her failure to comply with the Order to Show Cause.  Id., Doc. 71.  Plaintiff received

15  notification of the dismissal of the action on May 29, 2009 (Doc. 10 at 13).

16      Plaintiff alleges that Thornton, Rahman, Mims, and Mitchell intentionally opened and

17  read the Response and held on to it so that it would be untimely (Doc. 10 at 14).  Plaintiff

18  states that on June 1, 2009, she spoke with CO III Garcia, who refused to assist her in

19  contacting the Court to verify receipt of her Response (id.).  Plaintiff further states that

20  Garcia, Jones, and Backes all refused to accept her informal grievance about this incident

21  (id.).

22      At the relevant time, Thornton was working in the Santa Cruz Unit Mail and Property

23  Room (DSOF ¶ 90).  Thornton was not regularly assigned to the Santa Cruz Mail Room, but

24  on May 18, 2009, he happened to be filling in for the regularly assigned officer who was

25  absent (id. ¶ 93).  Defendants state that Thornton was unaware of Plaintiff's prior legal mail

26  difficulties (id.).

27      Rahman's job duties did not involve taking possession of outgoing legal mail and

28  delivering it to the designated box to be taken to the post office or transporting that box to

1    the post office (DSOF ¶ 44).

2       As mentioned, Mitchell—as a supervisor—did not process any of the mail that came

3    through the Complex Mail and Property Room (id. ¶ 72).

4       At the relevant time, Jones worked as a CO III at the Santa Cruz Unit (id. ¶ 78).  As

5    a CO III, Jones is not involved in handling legal mail (Doc. 81, Ex. K, Jones Decl. ¶ 10).

6       At the relevant time, Backes worked as CO IV at the Santa Cruz Unit, where his

7    duties included processing and investigating inmate grievances (DSOF ¶ 105).  Defendants

8    state that Backes was not personally involved in processing any of Plaintiff's mail (id. ¶ 116).

9       **B.   Defendants' Arguments**

10       Defendants argue that neither Rahman, Mims, nor Mitchell played any role in sending

11    out legal mail on May 18, 2009 (Doc. 80 at 8).  They further argue that, likewise, Backes,

12    Jones, and Garcia did not have anything to do with sending out legal mail that day (id.).  As

13    to Thornton, Defendants assert that he properly handled Plaintiff's legal mail pursuant to

14    policy and delivered it to the Complex Mail and Property Room (id.).  They add that

15    Thornton was unaware of Plaintiff's prior legal-mail issues (id.).

16       Defendants state that any grievance related to this incident had to be submitted to

17    Plaintiff's assigned CO III, and, although Garcia was her assigned CO III at the time,

18    Plaintiff has not demonstrated that she actually submitted a grievance to him (id.).

19       As to the access-to-courts claim related to May 2009 incident, Defendants contend

20    that regardless of whether any Defendant somehow delayed her mail to the Court, her claim

21    fails because she cannot show that she was harmed by such conduct (id. at 9).  According to

22    Defendants, the Court received her Response before dismissing the action on May 28, 2009,

23    and her case was not dismissed based on the date her Response reached the courthouse (id.).

24    Defendants argue that dismissal was based on her deficient response to the Order to Show

25    Cause; namely, that she did not establish why the Rooker-Feldman doctrine did not apply to

26    her case (id. at 9-10).

27       Alternatively, Defendants contend that any delay in sending out Plaintiff's legal mail

28    was not Thornton's doing (id.).  And Defendants state that the no other Defendant had

anything to do with sending out Plaintiff's legal mail (id. at 9-10).

## C.   Analysis

### 1.  Count III-Retaliation (Rahman, Mims, Mitchell, Thornton, Garcia, Jones, and Backes)

#### a.  Protected Conduct

As stated, Plaintiff's filing of a civil rights lawsuit in 2007 is protected conduct under the First Amendment.  Rizzo, 778 F.2d at 531-32; Valandingham, 866 F.2d at 1138.

#### b.  Adverse Action

Defendants present no argument regarding whether the delay in sending out Plaintiff's Response constituted an adverse action.  Instead, they argue that no Defendant was involved in sending out or delaying Plaintiff's outgoing legal mail (see Doc. 80 at 8-9).  As discussed above with respect to Count I, Plaintiff must demonstrate that Defendants took or caused the adverse action.  Rhodes, 408 F.3d at 567; see Leer, 844 F.2d at 634.

There is no dispute that on May 18, 2009, Plaintiff handed her legal mail to Thornton; that Thornton documented receipt of her legal mail on the appropriate Special Mail Transfer Form and Log; and that Plaintiff signed this form (Doc. 10 at 13; Doc. 81, Ex. L, Thornton Decl. ¶ 8).  Defendants submit documentary evidence showing that Thornton transferred Plaintiff's legal mail that same day to Officer Hartley, who signed off as the receiving officer (id., Ex. L, Attach. 10).  Thornton avers that after transferring the mail to Hartley, Thornton had no further involvement in delivering it to the post office and relied on other officers assigned to the mail room to complete that function (id., Ex. L, Thornton Decl. ¶ 11).

Although Plaintiff alleges that Thornton, as well as Rahman, Mims, and Mitchell opened and read and held on to her Response filing, Plaintiff presents no specific facts to support her allegation.  Nor does she provide specific facts or evidence to show that Rahman, Mims, or Mitchell ever handled her mail on May 18, 2009.  The evidence shows that following the documented processing of Plaintiff's legal mail by Thornton and Hartley, Rahman was not responsible for handling outgoing legal mail (id., Ex. H, Rahman Decl. ¶ 14).  Mims avers that he was not involved in accepting any of Plaintiff's outgoing legal mail on May 18, 2009 (id., Ex. I, Mims Decl. ¶ 17).  And Mitchell, as a Sergeant, did not

1  process any mail that came through the mail room (Doc. 83, Ex. J, Mitchell Decl. ¶ 7).

2  On this record, there is no evidence to suggest that any of these particular Defendants

3  were involved in delaying Plaintiff's outgoing legal mail on May 18, 2009.  Summary

4  judgment will therefore be granted to Thornton, Rahman, Mims, and Mitchell on the

5  retaliation claim in Count III.

6  The remaining Count III claim is that Garcia, Jones, and Backes refused to accept

7  Plaintiff's informal grievance about the May 2009 incident in retaliation for her protected

8  conduct (Doc. 10 at 14-15).  Jones and Backes do not deny that they may have refused to

9  accept Plaintiff's informal grievance; however, they assert that the grievance policy required

10  Plaintiff to submit any informal grievance to her assigned CO III—Garcia (Doc. 81, Ex. K,

11  Jones Decl. ¶ 11; Ex. M, Backes Decl. ¶ 11).  Defendants do not submit any sworn statement

12  from Garcia to refute Plaintiff's claim that Garcia refused to accept her informal grievance.

13  Defendants argue that Plaintiff has not shown that "she ever actually submitted any

14  grievance-related paperwork to [Garcia]" (Doc. 80 at 8).  But the allegations in Plaintiff's

15  First Amended Complaint that she spoke to Garcia and Garcia refused to accept her informal

16  grievance (Doc. 10 at 14), and her deposition testimony that Garcia refused to take her

17  grievance (Doc. 81, Ex. A, Pl. Dep. 41:5-10, 41:16-20, 42:15-21), is evidence—in this case,

18  undisputed evidence—that is considered on summary judgment. Construing the facts and

19  evidence in Plaintiff's favor, these three Defendants refused to accept Plaintiff's informal

20  grievance that complained about an outgoing-legal-mail issue.  There is no argument

21  presented by Defendants that this conduct does not amount to an adverse action; thus, there

22  is a genuine issue of material fact whether Garcia, Jones, and Backes took an adverse action

23  against Plaintiff.

24  ### c. Adverse Action "Because" of Protected Conduct

25  Again, to show that her protected conduct was "the substantial or motivating factor"

26  for the actions of Garcia, Jones, and Backes, Plaintiff must show that they knew about the

27  protected conduct and that there was proximity in time between the protected conduct and

28  Defendants' actions, that Defendants expressed opposition to the speech, or that Defendants'

1    reason for their actions was pretextual.  See Brodheim, 584 F.3d at 1271; Corales, 567 F.3d
2    at 568.

3           Garcia was not a party to the prior lawsuit, and Defendants assert that Plaintiff has not
4    shown that Garcia was aware of Plaintiff's prior mail issues (Doc. 80 at 8).  There is nothing
5    in the record to show that Garcia was involved with the January 2009 incident involving
6    returned mail related to the 2007 lawsuit, nor does Plaintiff allege in her pleading that Garcia
7    had knowledge of the prior lawsuit (see Doc. 10).  Thus, there are no facts or evidence from
8    which an inference could be made that Garcia knew about the protected conduct.  For this
9    reason, summary judgment will be granted to Garcia on Count III.

10          As a named Defendant in the 2007 civil rights action, Backes was aware of the
11   protected conduct.

12          Jones was not a party to the prior lawsuit, and he avers that he was not aware *of the*
13   *issues raised* in that lawsuit; however, he does not deny knowledge of the prior lawsuit (Doc.
14   81, Ex. K, Jones Decl. ¶ 12).  Further, the record shows that Jones investigated the January
15   2009 returned mail issue, which involved legal mail related to Plaintiff's prior civil rights
16   lawsuit (Doc. 10 at 5-6; Doc. 81, DSOF ¶ 81).  And Plaintiff testified in her deposition that
17   Jones would have been aware of the 2007 case because he handled a lot of the paperwork for
18   Plaintiff (Doc. 81, Ex. A, Pl. Dep. 40:4-9). From this evidence, the inference can be made
19   that at the time relevant to the events in Count III, Jones was aware of Plaintiff's protected
20   conduct.

21          In light of the material dispute over whether Backes or Jones were aware of the
22   protected conduct, the Court must address whether any of the other three elements exist.  The
23   Court proceeds directly to the last element—whether Defendants' proffered reason for their
24   actions was pretextual.  See Corales, 567 F.3d at 568.  The only proffered reason for Jones
25   and Backes refusing Plaintiff's informal grievance is that under the ADC grievance policy,
26   they were not the proper officials to whom Plaintiff was to submit an informal grievance
27   (Doc. 81, Ex. K, Jones Decl. ¶ 11; Ex. M, Backes Decl. ¶ 11; Ex. M, Attach. 1, § 802.08
28   (inmates must submit informal grievance to their assigned CO III)).  But Plaintiff testified

1  in her deposition that her assigned CO III, Garcia, refused to accept the informal grievance,

2  so Plaintiff went to Jones and explained that Garcia refused it, but Jones also refused to

3  accept it and sent her to Backes, who also refused to accept it and told Plaintiff that he refers

4  people back to their CO IIIs (Doc. 81, Ex. A, Pl. Dep. 41:5-44:23).  Defendants provide no

5  explanation for Garcia's refusal to accept Plaintiff's informal grievance, and Jones avers that

6  he could have accepted the grievance but does not explain why he refused to so in these

7  circumstances (id., Ex. K, Jones Decl. ¶ 11).  Similarly, Backes does not explain why he did

8  not assist Plaintiff after the CO IIIs refused to accept the informal grievance (see id., Ex. M,

9  Backes Decl. ¶ 11).  In short, Defendants fail to submit any reason for refusing to accept

10  Plaintiff's informal grievance *in these specific circumstances*, and, as a result, there exists

11  a genuine issue of material fact whether the proffered "pursuant to policy" reason is simply

12  pretextual.

13  ### d.  Chilled First Amendment Rights

14  As to the fourth element, an allegation that the prisoner-plaintiff suffered more than

15  minimal harm is sufficient—since such harm almost always has a chilling effect.  Rhodes,

16  408 F.3d at 567-68 n. 11.  The proper analysis is whether a person of ordinary firmness

17  would be chilled or silenced from exercising future First Amendment rights.  Id.

18  Although Plaintiff did not specifically allege a chilling effect as a result of Jones and

19  Backes' refusal to assist her with an informal grievance, she can still support her retaliation

20  claim if she alleges harm that is more than minimal.  See Watison v. Carter, 668 F.3d 1108,

21  1114 (9th Cir. 2012).  In Count III of her First Amended Complaint, Plaintiff alleges that her

22  injury was the refusal to send out legal mail and the resulting dismissal of her 2007 civil

23  rights lawsuit (Doc. 10 at 12).  That injury, however, does not correspond to the facts alleged

24  against Backes and Jones, since their alleged adverse action did not occur until after the 2007

25  lawsuit was already dismissed.  Plaintiff states only that Defendants' refusal to accept her

26  informal grievance amounted to a refusal to investigate ADC officials (id. at 14-15).  But

27  even assuming that these two Defendants investigated her grievance and found that ADC

28  officials improperly handled her outgoing legal mail, it would not have had any effect the

dismissal of her 2007 lawsuit.

"[W]ithout alleging a chilling effect, a retaliation claim without allegation of other harm is not actionable." Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir. 2001) (citing Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000)).  Plaintiff does not allege what harm she suffered as a result of Backes and Jones' actions, much less how their conduct affected her ability or intent to exercise her First Amendment rights.  As such, there is no triable issue on the element of harm.  Summary judgment will be granted to Backes and Jones on Count III.

>    **2.   Count IV-Access to the Courts (Rahman, Mitchell, Mims, and Thornton)**

As set forth above with respect to Count II, the Court cannot find that the underlying claim in Plaintiff's 2007 civil lawsuit was frivolous or without merit.  The Court must still determine, however, whether Plaintiff suffered any actual injury as a result of Defendants' alleged delay in delivering her Response to the Court.  See Lewis, 518 U.S. at 349.

The parties' dispute whether the Court received and considered Plaintiff's Response to the Order to Show Cause before entering judgment in CV 07-2105-PHX-GMS.  A careful reading of the docket reflects that Plaintiff is correct on this point.  Although the docket shows that Plaintiff's Response was received in the Clerk's Office on May 26, 2009, the docket entry indicates that the Response was not docketed until June 1, 2009—which was *after* judgment was entered automatically on May 28, 2009, pursuant to what appeared on the docket to be no response to the Order to Show Cause.  CV 07-2105-PHX-GMS, Docs. 71-72.  Thus, the Court did not consider Plaintiff's Response to the Order to Show Cause before it dismissed the action.

Based on the above information, regardless of any delay that may have occurred in the mail, Plaintiff's Response reached the Court before judgment was entered.  Defendants did not control the docketing of Plaintiff' Response.  As such, any actual injury Plaintiff may claim from the delay in docketing cannot be attributed to Defendants' actions.  For this reason, summary judgment will be granted to Defendants on Count IV.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 80).

(2) Defendants' Motion for Summary Judgment (Doc. 80) is **granted**.

(3) The Clerk of Court must enter judgment accordingly and terminate the action.

DATED this 30th day of July, 2012.

G. Murray Snow
United States District Judge